**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| In re | § | Chapter 11 |
| | § | |
| Vanderhall Exotics of Houston, LLC, | § | Case No. 17-34196 |
| | § | |
| Debtor. | § | |
| | § | |

**NATIONS EQUIPMENT FINANCE'S EMERGENCY MOTION FOR THE
APPOINTMENT OF A CHAPTER 11 TRUSTEE**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**THERE WILL BE A HEARING ON THIS MOTION ON JULY 11, 2017 AT 11:00 A.M. IN COURTROOM 400, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**AN EMERGENCY EXISTS DUE TO THE DEBTOR'S MANAGEMENT'S PROPENSITY TO COMMIT FRAUD AND TO DISSIPATE ASSETS. CONSIDERATION IS NEEDED AT THE EXISTING JULY 11, 2017 HEARING IN THIS MATTER.**

**TO THE HONORABLE DAVID R. JONES, CHIEF UNITED STATES BANKRUPTCY JUDGE**:

Nations Equipment Finance, LLC and Nations Fund I, LLC (collectively, "**Nations**,") hereby moves this Honorable Court, on an expedited basis, for an Order, substantially in the form of **Exhibit 1** attached hereto, immediately appointing a Trustee over the above-captioned Debtor's Estate.  In support of this Motion, Nation states as follows:

## I.
## INTRODUCTION

1.      The Debtor is the alter ego of John Leontaritis ("**Leontaritis**"), as are various other entities, none of which have a true legitimate business operation or financial future able to be reorganized.  Rather, the Debtor is nothing more than a *sham entity*, created to do Leontaritis' *dirty work*, including defrauding creditors, defrauding customers, defrauding federal and state licensed entities, and federal and state governmental entities.

2.      The filing of this Bankruptcy Case is nothing more than a thinly veiled attempt to place Leontaritis in the continued control of the Debtor's assets, potentially sheltering his personal assets, and the obvious continued intentional defrauding of third parties – while at the same time using the shield of the automatic stay as a sword to thwart creditors from recovering for the intentional damages caused to them.  There is clearly no business to reorganize, nor assets around which reorganization may be accomplished.

3.      While normally the Court should consider historical pre-petition acts of a Debtor with a *grain of salt* in connection with a Motion for the Appointment of a Trustee filed on the heels of the filing of the Petition, under the facts and circumstances of this Case, such historical intentional acts of Leontaritis and the Debtor will, without a doubt, continue to the detriment of the Debtor's creditors, absent the immediate appointment of a Trustee.

4.      As detailed below, Nations and a plethora of other creditors have been defrauded by Leontaritis and the Debtor, and the continuation of Leontaritis' reign, and that of his family, over the Debtor as if it is his personal *piggy bank*, needs to cease immediately.  At his core, Leontaritis is the *master architect* of the deluge of disputes that will ultimately become the hallmark of this case.  As the *master architect* of the disputes, it makes little sense to allow Leontaritis to remain in control of the Debtor and continue to convolute these proceedings and defraud creditors.

5.      Notwithstanding the Debtor's newly imposed obligations pursuant to the Bankruptcy Code and the Bankruptcy Rules, leaving Leontaritis in control of the Debtor's operations is the definitive *fox watching the hen house*.  There is absolutely no evidence that Leontaritis will change his ways, make the Debtor a legitimate enterprise, or be able to reorganize.  To the contrary, the Debtor's financial affairs are so destitute that reorganization is not possible, nor within Leontaritis' objective.  Further, while the Bankruptcy Code and the Bankruptcy Rules impose obligations on Leontaritis, his very likely post-Petition continued wickedness will not be able to be unwound after-the-fact.

6.      While Leontaritis remains in control of the Debtor's assets, the intentionally sequestered, hidden, dissipated and fraudulently transferred assets will remain out of the hands of the Debtor's creditors.   No post-act punishment will stop Leontaritis' continued injury to creditors, and thus *waiting to see if he does it again* should not be an option.  Rather, a Trustee is the sole option to protect creditors.  As demonstrated below, the United States District Court's contempt powers do not appear, thus far, to present any cause for concern to Leontaritis.  As long as Leontaritis is able to use the Debtor and its assets to his own personal benefit, and to hide his

personal assets within the Debtor, his fraudulent actions will continue to the detriment of creditors.

7.      Leontaritis appears also to be a *master at kicking the can down the road*, to avoid paying legitimate obligations, and in so doing, he continues to defraud more and more parties. Until his toys are taken away from him, and his means to enjoy those toys is halted, he will continue to use the Debtor for his personal benefit.  Now that he has chosen to use Title 11 for protection – that protection should be afforded to creditors as well.  Only the appointment of a Trustee will protect creditors given these facts.

8.      The ills summarized above and outlined below can be terminated by the immediate appointment of a Trustee.  As Nations does not believe reorganization is even remotely possible, a Chapter 11 Trustee at this time is warranted. At a minimum, review of the Debtor's operations by a duly appointed Trustee will likely lead to a conversion to Chapter 7. What will make a difference is the immediate appointment of a Trustee.

## II.
## LEONTARITIS' AND THE DEBTOR'S FICTITIOUS BUSINESSES

9.      Leontaritis is, on the records of the Texas Secretary of State, the sole and managing member of the Debtor, a Texas Limited Liability Company.  The Debtor is advertised as an exotic car dealer that buys, sells, trades, and rents used exotic cars.  The Debtor is sometimes known as Global Motorcars of Houston.  The Debtor operates from property located at 12978 Sugar Ridge Drive, in Stafford, Texas 77477 (the "**Sugar Ridge Property**").  The Sugar Ridge Property is owned, either directly or indirectly, by Leontaritis' father, Kosta Leontaritis ("**Kosta**").  The *all too close* relationship between Leontaritis and Kosta, involving the transfer of assets back and forth between them, using what appears to be either Leontaritis' or

the Debtor's assets, is detailed below.[1]  Leontaritis and Kosta appear to be the *puppet masters* over the Debtor and its related/affiliated entities.

10.     From the same Sugar Ridge Property, Leontaritis and/or Kosta operate several other businesses, including Asphwax, Inc. and Kosta Oil Field Technologies, Inc. d/b/a Kosta Tech.

11.     Leontaritis is also the sole and managing member of Global Motorcars of Nevada, LLC, ("**Global Nevada**"), a Nevada Limited Liability Company.  The Debtor's Chapter 11 Petition indicates that Global Nevada is a former name of the Debtor.  Global Nevada is advertised as a car dealer in Nevada.  Notwithstanding the foregoing, Global Nevada appears to have only one purpose and one asset, *to wit*: for Leontaritis to own and enjoy a 1995 Bombardier Lear 31 Jet, serial number 033D, registration number N539BA (the "**Private Jet**").  Global Nevada's business address is also the Sugar Ridge Property, and the Private Jet is maintained in a hanger in Houston, Texas.  Global Nevada has no legitimate ties to the state of Nevada.

12.     As detailed in-depth below, Leontaritis, using the Debtor as his alter ego, has several patterns pursuant to which third parties are defrauded.  Three of such *modus operandi* are outlined as follows:

> a.      Arrange for the borrowing of funds from a financial institution or other commercial lender using exotic vehicles as proposed collateral; acquire the vehicles using the borrowed funds; but never providing the title to the vehicle with the lenders lien thereon – all under the false promise that title to the vehicle is *coming*.

> b.      Selling an exotic vehicle and transferring title to the buyer; selling an exotic vehicle without transferring title, free and clear of a lender's lien; or selling a vehicle using either a forged lien release on the title; or obtain, by fraud, a duplicate title certificate without the lender's lien recorded – each such

---

[1] *See*, *e.g.*, *infra* at ¶ 22.f.

arrangement places the buyer of the vehicle and the legitimate lender at *odds* with each other.[2]

c.     Purchasing (or otherwise acquiring) exotic vehicles from third parties; leaving the title in the name of the third party, until the vehicle is sold or transferred to another third party, at which time the title is recorded in the new buyer's name; thus avoiding the title and registration process and fees, and more importantly eluding the recorded ownership of the vehicle in Leontaritis' or the Debtor's name.[3]

### III.
### LEONTARITIS' AND THE DEBTOR'S FRAUD UPON NATIONS

13.     This Motion is not about how Nations was defrauded by Leontaritis and the Debtor, and thus Nations is due relief – if that were the sole issue, Nations would be presenting its Motion for Relief From Stay to exercise its rights, and not be seeking broader relief, *to wit*: the appointment of a Trustee for the benefit of all interested parties.[4]   Rather, the fraud perpetrated, right up to the eve of filing of this Chapter 11 Case by Leontaritis and the Debtor, against Nations and others caught in their machinations, will demonstrate ample cause for the appointment of a Trustee.[5]

14.     On March 16, 2017, Nations filed an Original Complaint (the "**Complaint**") against the Debtor, Leontaritis, and others[6] in the United States District Court for the Southern District of Texas, Houston Division, which matter was assigned to the Honorable Vanessa D.

---

[2] *See, e.g.*, *infra* at ¶ 22.a.

[3] It is this scheme of doing business that creates a significant risk of the continued dissipation of assets of the Debtor – thus, warranting the appointment of a Trustee.  By way of explanation, leaving a vehicle allegedly owned by either Leontaritis or the Debtor, in the name of the former owner prevents creditors and governmental agencies from considering the vehicle the property of Leontaritis or the Debtor.

[4] At the appropriate time, Nations intends to, *inter alia*, seek relief from the automatic stay in order to exercise rights against collateral pledged to it by Leontaritis or the Debtor, and/or pursue claims for the recovery of assets fraudulently transferred by Leontaritis and/or the Debtor.

[5] Nations is confident that other interested parties in this Case will join in Nations' request for the appointment of a Trustee, and in so doing, will recount the fraud committed by Leontaritis and the Debtor upon them.

[6] Nations dismissed, without prejudice, the Complaint against parties other than the Debtor and Leontaritis.

Gilmore (the "**District Court**").  A copy of the Complaint is attached hereto as **Exhibit 2**, and incorporated herein by this reference.  The Complaint sought, *inter alia*, the recovery of more than $4 Million from Leontaritis and the Debtor.  Nations will not repeat herein all of the salient facts underlying the Complaint, but rather will outline facts that highlight the actions that Leontaritis and the Debtor were able to *pull off*.  Summarily, Leontaritis' and the Debtor's actions were the following:[7]

> a.     **First**, Leontaritis presented Nations knowingly false and fraudulent documentation demonstrating that the Debtor allegedly had purchased 30 Escalades from David Taylor Cadillac in Houston, Texas (the "**Cadillac Dealer**"), for the purchase price of $2,648,895.68.  The sham invoices are attached hereto as **Exhibit 3**, and incorporated herein by this reference;[8]

> b.     **Second**, to further demonstrate the alleged acquisition of the 30 Escalades, Leontaritis presented to Nations a knowingly false and fraudulent canceled check – a check the Cadillac Dealer stated it never saw nor deposited – notwithstanding the apparent bank logo and other official information on the page, and most importantly the deposit computerized markings and related information on the reverse side of the check.  The *sham* check is attached hereto as **Exhibit 4**, and incorporated herein by this reference;[9]

> c.     **Third**, Nations advanced approximately $2.4 Million, in exchange for liens against the non-existent 30 Escalades, but . . . never received the Title Certificates demonstrating Nations' lien;

> d.     **Fourth**, having fraudulently induced Nations to fund $2.4 Million, Leontaritis attempted to purchase only 17 Escalades from the Cadillac Dealer, and provided the Cadillac Dealer with a check for $1.4 Million – a check drawn on a closed bank account.  The *bounced* check is attached hereto as **Exhibit 5**, and incorporated herein by this reference;

---

[7] The factual recitations provided in this Motion are supported by the Exhibits hereto and will be supported by the testimony of an authorized representative of Nations.

[8] Nations is informed by the Cadillac Dealer that the documents, attached as **Exhibit 4** hereto, are not invoices at all, and most importantly, were never marked by the Cadillac Dealer as "Paid in Full," as indicated thereon.   The presumption is that Leontaritis made, or caused to be made, such markings to persuade Nations that Leontaritis or the Debtor paid for the 30 Escalades.

[9] As noted above, Nations asserts that Leontaritis and the Debtor have defrauded State licensed institutions, in this instance, a State licensed Bank.

     e.     **Fifth**, through a series of machinations Leontaritis and/or the Debtor ultimately acquired only 8 Escalades from the Cadillac Dealer – Escalades that were financed by Nations;

     f.     **Sixth**, not aware of any of the foregoing fraud, and while awaiting the Original Title Certificates for the 30 Escalades from the DMV (Nations was under the mistaken belief that the Title Certificates were *being processed*, and would arrive in due course – representations from, *inter alia*, Leontaritis), Nations advanced an additional $1.5 Million, in connection with Leontaritis' and/or the Debtor's acquisition of 9 exotic vehicles.  As with the 30 Escalades, liens against the Title Certificates for the 9 exotics were to be recorded with the DMV in the name of Nations, but no such recordation was ever done; and

     g.     **Seventh**, when Nations' repeated demands for Title Certificates to the 30 Escalades and the 9 exotics remained unanswered, a representative of Nations visited Leontaritis in Houston, Texas on March 10, 2017.  Leontaritis stated that 20 Escalades had been "leased out," showing the Nations representative what Leontaritis represented to be signed rental agreements for the Escalades.[10]  When Nations' representative requested copies of the rental agreements, and the Title Certificates to the 30 Escalades and the 9 exotics, Leontaritis, left and never returned back to the lobby of the building, having fled the premises, leaving Nations' representative waiting for hours for the documents, to no avail.

15.     Concurrent with the filing of the Complaint, Nations filed a Motion for Temporary Restraining Order, and supporting pleadings (the "**TRO**").  The Hearing on the TRO was set for April 7, 2017.

16.     Dreadfully fearful of the results of the Hearing on the TRO, significantly concerned with the well-founded fraud allegations against the Debtor and Leontaritis, and extremely fearful of having to testify before the District Court, Leontaritis on his own behalf and on behalf of the Debtor agreed, **without Hearing on the TRO nor Trial on the merits of the Complaint**, to a Final Judgment – in the amount of $4,070,075.76 (which amount included the entire principal balance sought by Nations in the Complaint) – which Judgement was approved

---

[10] This fictitious demonstration of 20 lease agreements was made at a time, unbeknownst to Nations, when Leontaritis had only acquired 8 Escalades from the Cadillac Dealer.

and Entered by the District Court on April 7, 2017 (the "**Judgement**"), a true and copy of which is attached hereto as **Exhibit 6**, and incorporated herein by this reference.[11]

17.     In order to provide Leontaritis and the Debtor with time to *gather the funds* to pay the Judgment, Nations entered into a *Settlement Agreement*.  Unlike a traditional settlement agreement which generally provides for the satisfaction of a judgment, the Settlement Agreement required Leontaritis and the Debtor to provide liens on 24 vehicles, allegedly owned by the Debtor or Leontaritis, as a condition to, and consideration for, Nations' forbearance from the collection of the Judgment.  The 24 vehicles were specifically identified by Leontaritis, as the vehicles to which he would provide to Nations Title Certificates with Liens in favor of Nations. In other words, it was not Nations who identified the 24 vehicles that would be provided as collateral, pending the payment of the Judgment, it was Leontaritis who designated all such vehicles.

## IV.
## NATIONS' POST-JUDGEMENT COLLECTION EFFORTS

18.     Unfortunately, but likely *par* for Leontaritis, Nations only received recorded liens on 19 vehicles – rather than the 24 vehicles identified by Leontaritis.[12]  To add insult to injury, neither Leontaritis nor the Debtor paid the Judgement when due, following the forbearance period, and thus Nations attempted, to no avail, to collect on the Judgment and to exercise its

---

[11]  The Judgment was negotiated in the hallway outside the District Court prior to the commencement of the Hearing on the TRO.  Neither Leontaritis nor a corporate representative of the Debtor were present.  Rather, three attorneys, from three different firms (Chip B. Lewis, Michael P. Fleming, and Dean M. Blumrosen), collectively appeared on behalf of Leontaritis and the Debtor.

As will become more evident below, and unbeknownst to Nations at that time, Leontaritis has a propensity to play a real life game of *Where's Waldo* with Courts and Creditors - either by failing or refusing to appear for hearings or other proceedings, or conveniently being out of the country during extended periods of time when judicial action is likely.  Leontaritis also relies on his frequent or extended "business travel" as justification for non-compliance with Court Orders or reasonable discovery efforts.

[12] Nations is currently in possession of the original Title Certificates for 19 vehicles, each having a lien thereon in favor of Nations, copies of which are attached hereto as **Exhibit 7**, and incorporated herein by reference.

rights against the 24 vehicles. Nations was thus forced to seek further relief from the District Court – Nations filed its *Post-Judgment Motion in Aid of Collection*, which was set for hearing on June 19, 2017, a copy of which is attached hereto as **Exhibit 8**, and incorporated herein by reference.

19.     On June 15, 2017, in connection with a *Motion to Withdraw As Counsel* filed by the 3 attorneys representing Leontaritis and the Debtor,[13] the District Court Ordered that the 3 attorneys appear before the Court on June 19, 2017, <u>with clients</u> (Leontaritis, and a representative of the Debtor). **At the June 19, 2017 hearing, neither Leontaritis nor a representative of the Debtor appeared**.[14]

20.     At the hearing on June 19, 2017, no objection or opposition was asserted to the *Post-Judgment Motion in Aid of Collection*, and the District Court entered its Orders authorizing Nations to, *inter alia*, seize the 24 vehicles, and to obtain the assistance of the United States Marshals. Attached hereto as **Exhibits 9 and 10**, are true and correct copies of the District Court's Orders.

21.     In addition, at the hearing on June 19, 2017, the District Court Ordered both Leontaritis and the Debtor to produce documents previously requested by Nations, on or before June 23, 2017. Such documents were to be produced in advance of June 30, 2017, scheduled post-Judgement depositions of Leontaritis, and an authorized representative of the Debtor. **The**

---

[13] The *Motion to Withdraw* was filed immediately following the filing of Nations' *Post-Judgment Motion in Aid of Collection*, and was based upon, *inter alia*, both a complete failure of communication among Leontaritis and the Debtor, on one hand, and the 3 attorneys on the other, as well as Leontaritis' failure or refusal to follow the legal advice and guidance of counsel. The bases for the *Motion to Withdraw* are demonstrative of what is very likely to happen in the near future in this Chapter 11 case – thus, further warranting the appointment of a Trustee.

[14] *See supra* text accompanying note 11.

53477/0016-14672732v3

**documents were not produced, nor did Leontaritis or an authorized representative of the Debtor appear at the scheduled depositions**.[15]

## V.
## POST-JUDGMENT FRAUD REVEALED

22.     In the process of collecting on the Judgement, including attempting to execute on the 24 vehicles, Nations became aware of an overabundance of what appears to be additional fraud by Leontaritis and the Debtor against Nations and several other parties.  It is the following acts that further demonstrate that Leontaritis should not be *running the show*, and instead a Trustee should be in charge of the Debtor's estate.    The following list of recently discovered events revealing deception and fraud likely only *scratch the surface* of Leontaritis' debauchery:

a.  **The Ferrari FF**:  Leontaritis ultimately caused the DMV to issue a Certificate of Title listing this vehicle as belonging to the Debtor subject to Nations' lien and represented to Nations that this vehicle was in the Debtor's possession by providing photos of the vehicle in compliance with the Settlement Agreement.  It has now come to light, *via* a lawsuit recently filed against the DMV and Nations, that Leontaritis and/or the Debtor apparently transferred the vehicle in August 2016 without a Certificate of Title and that the apparent transferee has had possession of this vehicle since that time, notwithstanding representations that this vehicle was in the Debtor's possession.[16]

b.  **The Ferrari 458**: Leontaritis ultimately caused the DMV to issue a Certificate of Title listing this vehicle as belonging to the Debtor subject to Nations' lien and represented to Nations that this vehicle was in the Debtor's possession by providing photos of the vehicle in compliance with the Settlement Agreement.  It has now come to light that, despite knowingly selecting this vehicle to be placed on the list of the 24 vehicles Leontaritis and/or the Debtor owned and possessed, they apparently transferred this vehicle *via* a fraudulently obtained Certified Copy of the Certificate of Title from the DMV in the days immediately preceding the entry of the Settlement Agreement.[17]  Nations has reason to believe that, notwithstanding representations that

---

[15] *See supra* text accompanying note 11.

[16] *See infra* at ¶ 24.a.

[17] Attached hereto as **Exhibit 11** are true and correct copies of the DMV Certified vehicle history reports for the Ferrari 458 demonstrating two separate chains of title for the same vehicle – the chain of title reflecting Nations' interest is based off of the Original Certificate of Title, and a second, invalid chain of title based off of the fraudulently obtained Certified Copy of the Certificate of Title.

11

this vehicle is in the Debtor's possession and Nations' possession of the Certificate of Title listing the Debtor as the owner and Nations as the first lienholder, this vehicle is no longer within the Debtor's possession or control.[18]

c.  **The Rolls Royce Dawn**: Leontaritis ultimately caused the DMV to issue a Certificate of Title listing this vehicle as belonging to the Debtor subject to Nations' lien and represented to Nations that this vehicle was in the Debtor's possession by providing photos of the vehicle in compliance with the Settlement Agreement.  Nations recently received reports that, despite knowingly selecting this vehicle to be placed on the list of the 24 vehicles Leontaritis and/or the Debtor owned and possessed, they apparently transferred this vehicle in February 2017, and also, in a *third* deceptive act, also apparently selected this vehicle as collateral for obligations owed to another lender, Westlake Flooring Company.[19]

d.  **The Mercedes Benz Maybach**: Notwithstanding Leontaritis' representation in connection with the Judgement that he would immediately provide Nations with a lien against this vehicle, the same was never accomplished.  It is now apparent that Leontaritis and/or the Debtor knowingly selected and placed this particular vehicle on the list of the 24 vehicles Leontaritis and/or the Debtor owned and possessed at a time when neither had a recorded interest in the vehicle because the vehicle was transferred in March 2017 to Westside Hummer.  This act of proposing this vehicle as collateral, pending the payment of the Judgement, is indicative of Leontaritis' fraudulent, and yet consistent, business model.

e.  **Falsified, and Potentially Forged, Government Documents:** In order to avoid taxes, recording and registration fees and *tipping off* his creditors, Leontaritis and the Debtor regularly purchased vehicles, allegedly on behalf of the Debtor, but failed or refused to cause the title to the vehicles to be recorded with the DMV in the Debtor's name.  When it became time to transfer the vehicle, Leontaritis, or one of the Debtors' employees at Leontaritis' direction, would alter certificates of title, bills of sale, and other official DMV forms, and submit documentation to, *inter alia,* falsify the actual dates of transfer.  By way of example, in addition to the discrepancies with the Ferrari FF discussed above, someone likely acting at the direction of Leontaritis, submitted an affidavit to the DMV falsely representing, *inter alia,* the date of transfer of the Ferrari FF.   This affidavit also contained a signature by the seller's representative that is facially different than that appearing on the Certificate of Title submitted to the DMV.[20]

---

[18] *See* **Exhibit 7**.

[19] *See infra* at ¶ 24.b.

[20] Attached hereto as **Exhibit 12**, is a true and correct copy of the DMV Certified vehicle history report for the Ferrari FF, demonstrating the clear doctoring of the Title transfer documents, in an effort to post-date or advance date the transfer, for the purpose of, inter alia, avoiding taxes, fees, penalties and other obligations owing to the State of Texas.

f. **The Presently Unknown Number of Transfers of Vehicles to Friends and Family**:  Nations is aware of the transfer of *at least* 10 vehicles in just the last five years from the Debtor to Leontaritis' parents, Kosta and Sophia; including, a 2006 Bugatti Veyron worth well in excess of $1 Million which was one of the vehicles pledged to Nations in the Settlement Agreement.[21]  Because Leontaritis' standard practice is to purchase vehicles without placing the vehicles in the Debtor's name, it may ultimately be impossible to determine how many other fraudulent transfers of *extremely* valuable vehicles occurred.

23.     Permitting Leontaritis to remain as the sole operator and person in control of the Debtor will permit him to continue to perpetrate such deceptive acts against innocent third parties and to continue defrauding his creditors.  The appointment of a Trustee will divest Leontaritis of such unfettered authority.

## VI.
## OTHER INTERESTED PARTIES HAVE CONFLICTING CLAIMS AGAINST THE ASSETS OF LEONTARITIS AND THE DEBTOR

24.     While Nations is in possession of the Judgement against both Leontaritis and the Debtor, other creditors are currently pursuing claims against both.  What is more important than the existence of the other pending litigation, is that the other pending matters assert conflicting claims and interests in and to the assets of Leontaritis and the Debtor.[22]  By way of example only, the following matters and conflicting interests are pending:

a. ***Woodside Credit, LLC, and Phillip Sarofim, vs. Texas Department of Motor Vehicles, NEF Titling Trust, LLC, Nations Equipment Finance, LLC, and Nations fund I, LLC.***[23]  In this matter, the Plaintiffs assert that the Ferrari FF

---

[21] Attached hereto as **Exhibit 13** is a true and correct copy of the DMV Certified vehicle history report for the 2006 Bugatti Veyron, demonstrating the direct transfer of the vehicle from the Debtor to Leontaritis' father, Kosta.

[22] While Nations provides details in this Motion of alleged interests in and to some of the same vehicles that Nations' either asserts an interest in, and/or lien against, the same is not an acknowledgment by Nations of the validity of such other claims, the accuracy of any statements made by such other parties, nor the agreement of Nations to the recitation of alleged facts.  The same remain subject to further resolution and dispute, and all of Nations rights in this regard are broadly reserved.

[23] Filed June 23, 2017, in the District Court, 48th Judicial Court of Tarrant County, Texas, Cause No. 048-292852-17.

13

was purchased from the Debtor in August 2016, although the Debtor never transferred the Certificate of Title to the vehicle. As of this date, Nations is in possession of the Original Certificate of Title, which provides for Nations' lien on the vehicle.[24]

b. ***Westlake Flooring Company, LLC d/b/a Westlake Flooring Services vs. Global Motorcars of Houston, LLC, Vanderhall Exotics of Houston, LLC, John Leontaritis, and the Texas Department of Motor Vehicles.***[25] In this matter, the Plaintiffs assert that 10 of the 24 vehicles addressed in the Settlement Agreement with Nations were also pledged to Westlake.

25.     The foregoing demonstrates that the alleged conflicting interests of creditors are solely caused by the actions of Leontaritis and the Debtor. To leave Leontaritis in control of the Debtor will not result in the resolution of such conflicting interests, as he himself is the cause of such conflicts. This Court should not trust the *master architect* will *clean-up his mess*.

## VII.
## LEGAL STANDARDS FOR THE APPOINTMENT OF A TRUSTEE

26.     The appointment of a chapter 11 trustee is governed by section 1104(a) of the Bankruptcy Code, which provides:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the Court shall order the appointment of a trustee –

(1)     For cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2)     If such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to

---

[24] *See* **Exhibit 7**.

[25] Filed June 8, 2017, in the District Court, 240th Judicial Court of Fort Bend County, Texas, Cause No. 17-DCV-242124.

the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

**A. The Appointment of a Trustee is Appropriate Due to Fraud, Dishonesty, and Conflicts.**

27.     The appointment of a Trustee "for cause" must be shown by clear and convincing evidence.  *In re Cajun Elec. Power Co-op., Inc.,* 191 B.R. 659, 662 (M.D.La.1995) *aff'd,* 74 F.3d 599 (5th Cir.1996), *cert. denied,* 117 S.Ct. 51 (1996); *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 9792582, at *9 (Bankr. S.D. Tex. Feb. 10, 2013).   Other reasons beyond fraud, dishonesty, incompetence, and gross mismanagement are sufficient for there to be cause to appoint a Trustee.  *See Cajun Elec.*, at 661 (stating that an actual conflict of interest is sufficient grounds to appoint a Trustee).   Prepetition acts may be the basis for the appointment of a Trustee. *See In re Amerejuve, Inc.*, No. 14-35482, 2015 WL 2226344, at *9, *10 (Bankr. S.D. Tex. Apr. 29, 2015) (finding pre-petition acts committed by a Debtor's majority shareholder to embezzle, or otherwise obtain funds from Debtor through dishonesty, to be sufficient grounds to appoint a trustee under § 1104(a)(1)).

28.     There is ample cause present for the appointment of a Trustee in this Case.  The Debtor's sole managing member personally conducted, and used the Debtor to conduct, a presently incalculable amount of fraud on the Debtor's creditors and untold third parties.  Any of these acts alone are sufficient to appoint a Trustee.  Taken as a whole, their effect is staggering.

29.     Leontaritis has shown himself to be an individual who is willing to say or do anything at the cost of others to avoid confrontation or to otherwise be *taken to task* for his actions.  At the very least, the Debtor's management is dishonest and wasteful.

30.     Lastly, allowing Leontaritis as the *master architect* of an elaborate, fraudulent scheme orchestrated for *his* personal benefit to remain in control of the Debtor is a path fraught with conflicts.  The Debtor will need to recover transfers made to Leontaritis or his family and

friends.  It is highly unlikely that Leontaritis will suddenly be willing to disgorge himself of the entirety of his *ill-gotten gains* without the requisite motivation that a Trustee will provide, nor is it likely that Leontaritis will vigorously pursue his friends and family.

31.     In light of how Leontaritis managed and conducted the Debtor's business to date as the Debtor's sole managing member, how can creditors ever be sure of the truth of a statement made on the Debtor' behalf should Leontaritis be left in control of the Debtor?

**B. It is in the Best Interest of the Debtor's Creditors and the Debtor's Estate to Appoint a Trustee.**

32.     In addition to, or *arguendo* should the Court find there to be insufficient "cause" to appoint a Trustee under section 1104(a)(1), the "for cause" standard discussed in the preceding section, Bankruptcy Courts have discretion to appoint a trustee "if such appointment is in the interest of creditors . . . and other interests of the estate."  11 U.S.C. § 1104(a)(2).  *See also In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3rd Cir. 1998) (holding the standard under section 1104(a)(2) to be a flexible one); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3rd Cir. 1989) (same).  Courts have considered four factors in deciding whether the appointment of a Trustee under section 1104(a)(2) is appropriate: "(1) the trustworthiness of the debtor; (2) the debtor-in-position's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a trustee, balanced against the cost of an appointment." *Cajun Elec.*, at 661-61.

33.     The factors counseling for the appointment of a Trustee weigh heavily in favor of appointing a Trustee in this Case.  Leontaritis, as the Debtors' sole managing member, has shown a strong propensity to participate and lead scams against creditors and third parties, and

16

thus, is not to be trusted. Due to Leontaritis' efforts to use the Debtor as the means to defraud creditors as detailed herein, the Debtor's prospects for rehabilitation are doubtful at best. Given the significant amount of fraud committed against them, the Debtor's creditors and customers alike are unlikely to favor the Debtor's management. Indeed, should Leontaritis remain in control of the Debtor, even the Debtor's secured creditors can be certain of a *zero cents on the dollar* recovery. And, while Nations recognizes that, in the vast majority of cases, keeping the existing management of the debtor in place is in everyone's best interest — Nations respectfully submits that this is not such a case.[26]

## VII.
## CONCLUSION

WHEREFORE, based upon the forgoing law, the legal arguments and the evidence presented, including that which is expected to be presented at the hearing on this Motion, Nations respectfully suggests that ample cause exists for the entry of an Order, substantially in the form of **Exhibit 1** attached hereto, for the immediate appointment of a Chapter 11 Trustee and such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: July 10, 2017

**COLE SCHOTZ P.C.**
By: */s Michael D. Warner*
Michael D. Warner (TX Bar No. 792304)
Benjamin L. Wallen (TX Bar No. 24102623)
301 Commerce Street, Suite 1700
Fort Worth, TX 76102
Telephone: (817) 810-5250
Email: mwarner@coleschotz.com
Email: bwallen@coleschotz.com

**ATTORNEYS FOR NATIONS**

---

[26] The Court is all too aware of the benefits of keeping existing management in place in a legitimate operating business for such important reasons as *continuity*. This is not a legitimate operating business – and clearly continuity is not what the Debtor needs or the creditors can any longer afford.

53477/0016-14672732v3

## CERTIFICATION OF ACCURACY

The filing attorney certifies the accuracy of this pleading.

*/s Michael D. Warner*

Michael D. Warner

## CERTIFICATION OF SERVICE

The filing attorney certifies that on July 10, 2017, a copy of the foregoing Motion was served pursuant to the Court's ECF system and *via* First Class Mail on the Twenty Largest Unsecured Creditors and the parties identified by the Debtor in the *Debtor's Emergency Motion for Preliminary, Interim, and Final use of Cash Collateral* [Docket No. 7].

*/s Michael D. Warner*

Michael D. Warner

18